WILLIAM MOORE *versus* SAMUEL GIBSON *& al.*

A sawmill, owned by the plaintiff and the defendants' grantor, as tenants in
common, was destroyed by fire. Subsequently, the latter called a meeting
of the owners, and proceeded to rebuild under R. S., of 1841, c. 86. Hav-
ing rebuilt, he conveyed to the defendants by deed of warranty, contain-
ing the following:—"meaning hereby to convey one-half of the sawmill
privilege and all the mill, subject to the claims of William Moore, in said
mill, and reserve to myself all my claims and rights of action against the
said Moore which I now have:"—*Held,—*
1. That defendants' grantor acquired no title under the mill Act to the half
of the mill of which the plaintiff had a deed;
2. That the proceedings under the mill Act, could, at most, give him a lien
to be "reimbursed and paid such sums, as he had advanced thereon," &c.;
3. That his deed did not give his grantees a lien on the demanded prem-
ises;
4. That the separation of the claim from the security, was a dissolution of
the lien; and,
5. That all testimony relating to the proceedings of calling a meeting of
the owners, and the proceedings under it are inadmissible under the plea of
*nul disseizin* and brief statement setting out those proceedings.

ON REPORT from *Nisi Prius*, KENT, J., presiding.

DICKERSON, J.—Writ of entry to recover one-half of a
sawmill and one-half of a mill privilege, and for mesne pro-
fits. The general issue was pleaded and a brief statement
filed together with specifications of defence. The plaintiff's
title by deed is admitted. The defendants derived their
title to the other half of the mill and privilege through sev-

eral mesne conveyances from one Calvin Atwood, who acquired his title by deed from the plaintiff.

The defendants set forth in their brief statement, that Atwood, through whom they claim title, rebuilt the mill in 1854, under the statute of 1841, c. 86, and that the advances he thus made had not been paid; and they claim that they have the same right to defend this action that Atwood would have had, if he had continued to occupy the premises as he did before the sale to his grantees. The defendants introduced testimony upon which they rely to show that Atwood had instituted proceedings necessary to entitle *him* to the benefit of the statute, to which the plaintiff objected. By agreement of the parties, the Court is to decide the case according to the law applicable to such evidence as is legally admissible.

The defendants have filed no disclaimer to the demanded premises, but put in a plea of *nul disseizin.* This plea puts in issue only the question whether the demandant or the tenant has the better title. Under the general issue, thus pleaded, proof of a better title in a third party under whom the tenant holds would be no defence to this action. If the defendants would avoid the effect of the plaintiff's title by deed they must do so by competent proof under their brief statement. Before they can avail themselves of any supposed rights which Atwood may have acquired to the demanded premises under the mill Act of 1841, they must show their claim thereto. The conveyance by Atwood to his grantees was by deed of warranty, which contained this clause, "meaning to convey by this deed one-half of the sawmill privilege, and *all the mill,* subject to the claims of William Moor in the said mill; and reserve to myself all my claims and rights of action against the said Moor which I now have." The only interest Atwood had, if any, to the half of the mill of which the plaintiff has a deed, was what he had acquired under the mill Act of 1841. But that Act gave him no title to the other half of the mill thus erected by him, whatever may have been his action under it; it did

not divest the plaintiff of his *title* and vest it in Atwood, but provides that he "should be reimbursed and paid such sums as he had advanced thereon, with interest for the same, in the mean time, out of said mill or the profits." Atwood could not, if he would, give a valid *title* to the plaintiff's half of the mill. He did not undertake to do so, but made the conveyance subject to the plaintiff's claim, and reserved to himself all claim in the plaintiff for reimbursement. He did not give his grantees a lien on the demanded premises, if any he had; the separation of the claim from the security was a dissolution of the lien.

This construction of the deed is confirmed by the obligation entered into between Atwood and his grantees on the day the deed was given. This obligation recites the fact of the conveyance as "subject to the right of William Moore in the same," and binds Atwood to procure from him a quitclaim deed of his interest in the premises for the benefit of the grantees, or to fully indemnify them for the said claim. As a security for the fulfilment of this stipulation, the obligation provides that one of the notes given in part payment for the conveyance shall be deposited with a third person until Atwood has obtained the deed of release, or given the grantees a bond of indemnity against Moore's claim.

The defendants acquired by their deed no claim whatever to the interest Atwood had, if any, in the plaintiff's half of the mill, by virtue of his alleged proceedings under the mill Act. All testimony, therefore, in regard to those proceedings, is inadmissible.

*Plaintiff to have judgment for possession, and mesne profits during the joint occupancy of the mill by the defendants.*

George C. Getchell, Esq., of North Anson, to estimate the value of the mesne profits.

APPLETON, C. J., KENT, WALTON, BARROWS and DANFORTH, JJ., concurred.

*S. Heath*, for the plaintiff.

*J. H. Webster*, for the defendants.